T.C. Memo. 2002-303

UNITED STATES TAX COURT

W. AUGUST HILLENBRAND AND NANCY K. HILLENBRAND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5923-99.                    Filed December 12, 2002.

<u>Larry J. Stroble</u> and <u>Jennifer A. Seymour</u>, for petitioners.

<u>Stewart Todd Hittinger</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Chief Judge</u>:  Respondent determined deficiencies in
petitioners' gift taxes as follows:

| Year | W. August Hillenbrand | Nancy K. Hillenbrand |
|------|------|------|
| 1993 | $124,613 | $120,082 |
| 1994 | 19,019 | 18,329 |
| 1995 | 56,085 | 55,838 |

The issue to be decided is whether the Court has
jurisdiction to decide whether the deficiencies for the years in

issue have been paid, where, in response to the notices of deficiency, petitioners sent the Internal Revenue Service remittances and directed that the remittances be applied to the deficiencies in issue, and, subsequently, respondent made an erroneous nonrebate refund of those remittances to petitioners. All section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties submitted the instant case fully stipulated, without trial, pursuant to Rule 122. The parties' stipulations of facts are hereby incorporated in this opinion by this reference and are found as facts in the instant case.

Petitioners W. August Hillenbrand and Nancy K. Hillenbrand are husband and wife. When the petition was filed, they were residents of Batesville, Indiana. During the years in issue, petitioner W. August Hillenbrand was the chief executive officer of Hillenbrand Industries, Inc.

During 1993, 1994, and 1995, petitioners made substantial gifts to their children and son-in-law. In 1993, 1994, and 1995, petitioners also made contributions to trusts commonly referred to as "Grantor Retained Annuity Trusts" (GRATs). Petitioners each filed Federal gift tax returns for 1993, 1994, and 1995.

Respondent examined petitioners' 1993, 1994, 1995, and 1996[1] Federal gift tax returns. For the same periods, respondent also examined the gift tax returns of petitioners' children and son-in-law. Petitioners' gifts to their children and son-in-law were of Hillenbrand Industries stock, interests in a limited partnership, and remainder interests in certain so-called GRATs.

On September 15, 1998, petitioners' attorney, Larry J. Stroble, sent respondent a letter accompanied by six checks remitted by petitioners, William A. Hillenbrand II, Theresa A. Hartmann, Katherine K. Crowther, Richard D. Hillenbrand II, and Martha L. Tuveson. The letter, dated September 15, 1998, accompanying the six checks, stated:

> Enclosed are various checks which are to be considered deposits in the nature of cash bonds in accordance with Rev. Proc. 84-58. The checks are cash bonds related to the tax deficiency and interest asserted by the Internal Revenue Service in connection with gift tax examinations of the taxpayers for the years reflected below, and are intended to halt the accrual of interest on such tax deficiencies and previously accrued interest.

The six checks totaled $1,457,460. The check remitted on behalf of petitioners was in the amount of $1,242,082, or $621,041 on behalf of each petitioner. Petitioners intended the check to cover their 1993, 1994, 1995, and 1996 Federal gift tax years, as explained in the letter accompanying the check.

---

[1] Petitioners' 1996 Federal gift tax year is not before this Court in the instant case.

On November 23, 1998, petitioners and respondent agreed upon certain audit adjustments regarding petitioners' 1993, 1994, 1995, and 1996 Federal gift tax years, except for the issue of whether the spousal interests provided for in the GRATs were qualified interests within the meaning of section 2702 for petitioners' 1993, 1994, and 1995 Federal gift tax years (the GRAT issues).

On December 4, 1998, respondent made assessments against petitioners relating to the November 23, 1998, agreement covering the adjustments other than those relating to the GRAT issues. Respondent assessed $411,682.46 in Federal gift taxes against petitioner W. August Hillenbrand's $621,041 deposit, and, on January 4, 1999, sent him an unsolicited refund of $209,358.54. Respondent assessed $387,078.19 in Federal gift taxes against petitioner Nancy K. Hillenbrand's deposit of $621,041, and, on January 4, 1999, sent her an unsolicited refund of $233,358.54 (the foregoing two checks are collectively hereinafter sometimes referred to as the January 4, 1999, refunds). The January 4, 1999, refunds were not related to the GRAT issues.

Respondent and petitioners continued to disagree, however, about the amount of Federal gift taxes due regarding the GRAT issues. On December 30, 1998, respondent mailed six notices of deficiency to petitioners covering the GRAT issues. On February 12, 1999, in response to the six notices of deficiency,

petitioners' attorney sent respondent six checks.[2]  Accompanying
the checks was a letter, dated February 12, 1999, which stated,
in part:

> If it has not already occurred, we request that
> the Service apply the cash bonds previously posted on
> behalf of Mr. and Mrs. Hillenbrand for 1993, 1994, and
> 1995 to the tax deficiencies for those years, and we
> request that the enclosed checks be applied as
> additional payments with respect to those deficiencies.

The February 12, 1999, letter further indicated the
following allocations of the funds represented by the checks
enclosed with the February 12, 1999, letter:  As to petitioner W.
August Hillenbrand, $187,957 should be applied to 1993, $26,531
should be applied to 1994, and $71,035 should be applied to 1995;
as to petitioner Nancy K. Hillenbrand, $180,949 should be applied
to 1993, $24,466 should be applied to 1994, and $70,718 should be
applied to 1995.

The foregoing specific allocations were further reflected on
the lower left-hand side on the face of each of the six checks
enclosed with the February 12, 1999, letter.  Each check
identified the specific individual and tax year.  Check No. 4405,
for $187,957, is marked "1993 W August Hillenbrand".  Check No.
4406, for $26,531, is marked "1994 W August Hillenbrand".  Check
No. 4407, for $71,035, is marked "1995 W August Hillenbrand".

---

[2]These six checks were different from the six checks
remitted to respondent by petitioners and their children on Sept.
15, 1998.

Check No. 4408, for $180,949, is marked "1993 Nancy K. Hillenbrand".  Check No. 4409, for $24,466, is marked "1994 Nancy K. Hillenbrand".  Check No. 4410, for $70,718, is marked "1995 Nancy K. Hillenbrand".  All checks were drawn on the same account at Bank One, Indianapolis, N.A. (the foregoing six checks are collectively hereinafter sometimes referred to as the February 12, 1999, remittances).

Respondent did not post the February 12, 1999, remittances to the years designated by petitioners; i.e., petitioners' 1993, 1994, and 1995 Federal gift tax years.  Rather, in error, respondent posted the February 12, 1999, remittances to petitioners' 1998 Federal gift tax year, as reflected on respondent's accounts for petitioners' 1998 Federal gift taxes (respondent refers to these accounts as module accounts, and hereinafter those accounts will be referred to as module accounts).  Respondent never issued a notice of deficiency for petitioners' 1998 Federal gift tax year, and there is no indication in the record that petitioners were liable for any Federal gift taxes for 1998 or that such liabilities were ever contemplated by either party.

Respondent's internally generated module accounts for petitioners' 1998 Federal gift tax year were consistent in amounts with the February 12, 1999, remittances that were designated for petitioners' 1993, 1994, and 1995 Federal gift tax

years.  Respondent's 1998 Federal gift tax module account for petitioner W. August Hillenbrand indicates that there were three "subsequent payments" made on February 16, 1999, of $26,531, $187,957, and $71,035.  Similarly, respondent's 1998 Federal gift tax module account for petitioner Nancy K. Hillenbrand indicates that there were three "subsequent payments" made on February 16, 1999, of $24,466, $180,949, and $70,718.

In their petition, petitioners contested respondent's determinations in the notices of deficiency relating to the GRAT issues.  Respondent's determinations adjusted the valuation of the GRATs under section 2702.  Respondent and petitioners conceded that the substantive issue regarding the GRAT issues would be decided by a case before this Court, Cook v. Commissioner, 115 T.C. 15 (2000), affd. 269 F.3d 854 (7th Cir. 2001), which was subsequently decided in favor of the Commissioner.  Accordingly, petitioners concede that respondent's determined deficiencies, as stated in the notices of deficiency issued on December 30, 1998, reflect the correct deficiencies in the instant case.

On May 31, 1999, respondent erroneously refunded $287,827 to petitioner W. August Hillenbrand, consisting of a $285,523 refund and $2,304 in interest.  Similarly, on June 7, 1999, respondent erroneously refunded $278,788 to petitioner Nancy K. Hillenbrand, consisting of a refund of $276,133 and $2,655 in

interest.  The parties have stipulated that the May 31, 1999, refund to petitioner W. August Hillenbrand and the June 7, 1999, refund to petitioner Nancy K. Hillenbrand are erroneous nonrebate refunds (hereinafter the erroneous refunds).  The erroneous refunds were made with respect to petitioners' 1998 Federal gift tax module accounts, which were the same module accounts to which respondent posted petitioners' February 12, 1999, remittances.  Petitioners neither solicited the refunds nor recognized that the erroneous refunds represented the agreed-upon amounts, plus interest, sent to respondent in the February 12, 1999, remittances.

Subsequent correspondence between respondent and petitioners' counsel revealed that respondent believed that petitioners still owed the deficiencies determined in the December 30, 1998, notices of deficiency, even after petitioners sent respondent the February 12, 1999, remittances.  On November 21, 2001, respondent informed petitioners' counsel that respondent had made the January 4, 1999, refunds, and that petitioners were still liable for the deficiencies determined on December 30, 1998.

On December 3, 2001, petitioners' counsel informed respondent that petitioners sent the February 12, 1999, remittances to cover the deficiencies determined in the December 30, 1998, notices of deficiency.  In the December 3, 2001,

letter, petitioners' counsel informed respondent that petitioners had received the January 4, 1999, refunds but had also sent the February 12, 1999, remittances to respondent to stop the running of interest and pay all outstanding liabilities and interest. Sometime after December 3, 2001, the date of petitioners' counsel's letter, respondent discovered that the erroneous refunds had been made. Before the discovery of the erroneous refunds after that date, neither counsel for petitioners nor for respondent were aware that the erroneous refunds had been sent to petitioners.

## Discussion

The parties have stipulated that Cook v. Commissioner, supra, resolves the substantive issue of petitioners' Federal gift tax liability in the instant case. The parties are bound to that stipulation. Blonien v. Commissioner, 118 T.C. 541 (2002); see Niedringhaus v. Commissioner, 99 T.C. 202 (1992). The only issue we must decide is whether we have jurisdiction to decide whether the February 12, 1999, remittances paid the deficiencies in issue in the instant case.

The United States Tax Court is a court of limited jurisdiction, in that this Court possesses only adjudicatory powers that Congress has conferred upon it. Naftel v. Commissioner, 85 T.C. 527 (1985); see Euramco Associates, Inc. v. Commissioner, T.C. Memo. 1991-39, affd. sub nom. Albert J.

<u>Petrulis, D.D.S., S.C. v. Commissioner</u>, 938 F.2d 78 (7th Cir. 1991). That adjudicatory power encompasses the redetermination of deficiencies and the determination of overpayments. Secs. 6214(a), 6512(a). Moreover, we have jurisdiction only for taxable years properly before us. Sec. 6214(b); see <u>Hill v. Commissioner</u>, 95 T.C. 437 (1990).

Petitioners initiated the instant case in response to respondent's determination of deficiencies in the notices sent to petitioners. Accordingly, we may decide the issue of whether the February 12, 1999, remittances paid the deficiencies only if the issue properly comes within our deficiency jurisdiction under section 6214(a) or our overpayment jurisdiction under section 6512(a). We hold that this Court lacks jurisdiction to decide the issue.

For purposes of section 6214, deficiencies are defined by section 6211. Section 6211 defines a deficiency as follows:

SEC. 6211. DEFINITION OF A DEFICIENCY.

(a) In General.--For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 41, 42, 43, and 44 the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44 exceeds the excess of--

(1) the sum of

(A) the amount shown as the tax by the taxpayer upon his

> return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
>
> (B) the amounts previously assessed (or collected without assessment) as a deficiency, over--
>
> (2) the amount of rebates, as defined in subsection (b)(2), made.

In other words, the deficiency is the correct tax, minus the tax shown on the return, minus prior assessments (or collections without assessment), plus rebates. Sec. 6211(a); see Interlake Corp. v. Commissioner, 112 T.C. 103, 110 n.6 (1999). We have said that "it is not the existence of a deficiency but the Commissioner's determination of a deficiency that provides a predicate for Tax Court jurisdiction." Hannan v. Commissioner, 52 T.C. 787, 791 (1969); see Logan v. Commissioner, 86 T.C. 1222 (1986). Payments are not included in determining or redetermining a deficiency, simply because they do not fit within the definition of a deficiency. Sec. 6211(a); see Malachinski v. Commissioner, T.C. Memo. 1999-182, affd. 268 F.3d 497 (7th Cir. 2001); see also Savage v. Commissioner, 112 T.C. 46 (1999); Logan v. Commissioner, supra at 1227-1230; Clarke v. Commissioner, T.C. Memo. 1999-199.

Petitioners contend that the February 12, 1999, remittances should be treated as amounts "collected without assessment" for purposes of section 6211(a)(1)(B). However, it is well

established that "collected without assessment" applies to payments made <u>before</u> the Commissioner issues a notice of deficiency. <u>Crawford v. Commissioner</u>, 46 T.C. 262 (1966); see <u>Bendheim v. Commissioner</u>, 214 F.2d 26, 28 (2d Cir. 1954), affg. T.C. Memo. 1953-226; see also <u>McConkey v. Commissioner</u>, 199 F.2d 892, 894 (5th Cir. 1952) (applying section 271(a) of the 1939 Internal Revenue Code, a predecessor of section 6211(a)); <u>Walsh v. Commissioner</u>, 21 T.C. 1063, 1067 (1954); <u>Anderson v. Commissioner</u>, 11 T.C. 841, 843 (1948). In those cases, this Court lacked jurisdiction to redetermine a deficiency because the "deficiency" had been satisfied by funds "collected without assessment" <u>before</u> the Commissioner sent the taxpayer a notice of deficiency. <u>Crawford v. Commissioner</u>, <u>supra</u>; see <u>Bendheim v. Commissioner</u>, <u>supra</u>. Moreover, section 6213(b)(4)[3] provides that

_____

[3]Sec. 6213(b)(4) provides:

  SEC. 6213(b). Exceptions to Restriction on Assessment.--

    *  *  *  *  *  *  *

    (4) Assessment of amount paid.--Any amount paid as a tax or in respect of a tax may be assessed upon the receipt of such payment notwithstanding the provisions of subsection(a). In any case where such amount is paid after the mailing of a notice of deficiency under section 6212, <u>such payment shall not deprive the Tax Court of jurisdiction over such deficiency determined under section 6211 without regard to such</u>

               (continued...)

payments made to this Court <u>after</u> the notice of deficiency will not deprive this Court of jurisdiction to redetermine taxpayers' deficiencies.  In other words, section 6213(b)(4) permits the assessment of a payment made by a taxpayer in response to a notice of deficiency, but such a payment does not deprive this Court of jurisdiction over the deficiency as determined under section 6211 without regard to the assessment.  Accordingly, the February 12, 1999, remittances,[4] made <u>after</u> the December 30, 1998, notices of deficiency, were not "amounts previously assessed (or collected without assessment) as a deficiency" and thus are not subtracted from the deficiency to be adjudicated by our decision.[5]

---

[3](...continued)
    <u>assessment</u>. [Emphasis added.]

[4]Petitioners contend that Rev. Proc. 84-58, 1984-2 C.B. 501, would treat the Feb. 12, 1999, remittances as "payments" of tax. Respondent contends that Rev. Proc. 84-58 does not bind respondent in the instant case.  While we do not decide this issue because we hold that we lack jurisdiction to decide it, in that regard, see <u>Rauenhorst v. Commissioner</u>, 119 T.C. 157 (2002), (Commissioner is bound to positions stated in Commissioner's published guidance).

[5]Petitioners contend that the Feb. 12, 1999, remittances extinguished their tax liability, and they cite a number of cases in support of this proposition, including:  <u>Clark v. United States</u>, 63 F.3d 83 (1st Cir. 1995); <u>United States v. Wilkes</u>, 946 F.2d 1143 (5th Cir. 1991); and <u>Rodriquez v. United States</u>, 629 F. Supp. 333 (N.D. Ill. 1986).  Those cases state that when a "taxpayer tenders payment on an assessment, that payment extinguishes the assessment to the extent of the payment." <u>Clark v. United States</u>, <u>supra</u> at 87; see <u>O'Bryant v. Commissioner</u>, 49
(continued...)

Petitioners and respondent agree that the erroneous refunds are nonrebate erroneous refunds because they were not created by respondent's substantive recalculation of petitioners' Federal gift tax liability; the erroneous refunds arose because of respondent's mistake or error.  See O'Bryant v. United States, 49 F.3d 340 (7th Cir. 1995).  Because the refunds are considered nonrebate erroneous refunds, they do not enter into the determination of deficiencies in petitioners' Federal gift taxes for 1993, 1994, and 1995.  Sec. 6211(a) and (b); see O'Bryant v. United States, supra; see also Interlake Corp. v. Commissioner, supra.

As we stated above, our statutory authorization to decide tax liabilities extends not only to deficiencies under section 6214(a) but also to overpayments (subject to specific limitations not relevant here).  Sec. 6512(b)(1).[6]

_____

[5](...continued)
F.3d 340 (7th Cir. 1995).  Those cases are distinguishable from the instant case in that they arose in Federal District Court and under circumstances where the taxpayers had paid their taxes and were seeking a refund.  Thus, in those cases, the Commissioner had made a final assessment.

[6]Sec. 6512 provides in part:

SEC. 6512.  LIMITATIONS IN CASE OF PETITION TO TAX COURT.

(b) Overpayment Determined by Tax Court.--

(1) Jurisdiction to determine.--Except as provided by paragraph(3) and by section
(continued...)

Petitioners do not assert that the differences between the February 12, 1999, remittances and the deficiencies in issue constitute overpayments for petitioners' 1993, 1994, and 1995 Federal gift tax years.  Indeed, petitioners contend that no overpayments exist in the instant case.  We treat as a concession the contention that the February 12, 1999, remittances did not create any overpayment in petitioners' Federal gift tax for the years in issue.  See Schladweiler v. Commissioner, T.C. Memo. 2000-351, n.3, affd. 28 Fed. Appx. 602 (8th Cir. 2002); see Wynn v. Commissioner, T.C. Memo. 1996-415, n.11.

---

[6](...continued)
7463, if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, of gift tax for the same calendar year or calendar quarter, of estate tax in respect of the taxable estate of the same decedent, or of tax imposed by chapter 41, 42, 43, or 44 with respect to any act (or failure to act) to which such petition relates for the same taxable period, in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.  If a notice of appeal in respect of the decision of the Tax Court is filed under section 7483, the Secretary is authorized to refund or credit the overpayment determined by the Tax Court to the extent the overpayment is not contested on appeal.

If petitioners had contended that an overpayment exists in the instant case due to the February 12, 1999, remittances, this Court would have jurisdiction to decide whether they should be treated as payments of the deficiencies in issue.  Sec. 6512(b)(1); see <u>Naftel v. Commissioner</u>, 85 T.C. 527 (1985); see also <u>Baumgardner v. Commissioner</u>, 85 T.C. 445 (1985); <u>Keefe v. Commissioner</u>, 15 T.C. 947 (1950).  Thus our overpayment jurisdiction is not invoked.

On the basis of the foregoing, we will enter a decision for respondent with respect to the deficiencies in issue without any statement as to whether those deficiencies have been paid.[7]

We have considered all of the contentions of the parties that are not discussed herein, and we find them to be without merit, irrelevant, or moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[7]We note that this Court might have jurisdiction under secs. 6320 and 6330 to decide whether the Feb. 12, 1999, remittances paid the deficiencies in issue, but that jurisdiction has not been invoked in the instant case.